**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

**KENNETH TODD NELSON,**                    )
                                            )
         **Plaintiff,**                     )
                                            )
    **v.**                                  )         **Civil Action No.:**
                                            )
**TOWN OF WAYLAND BOARD OF**                )
**HEALTH;**                                 )
         **Defendants.**                    )
_____ )

## COMPLAINT

The Plaintiff, Kenneth Todd Nelson, is aggrieved by the action taken by the Town of

Wayland Board of Health (the "Board") in declaring his permit to install a septic system on his

property void. After the Town of Wayland spent years unsuccessfully opposing Mr. Nelson's

efforts to build a single-family home on his property, the Board finally granted Mr. Nelson a

necessary permit to install a septic system. The Board then unilaterally voided the permit,

claiming that new data justified looking into the matter further. The Board's action in voiding the

septic tank permit violates 310 C.M.R. 15.020(1), and Mr. Nelson's rights to equal protection

and due process.

The above-referenced determinations by the Town of Wayland ("Town") are not isolated

incidents, but instead the latest iteration of a long pattern of conduct aimed at unfairly depriving

Mr. Nelson of his ability to use and develop his property. Where the Town, and its administrative

bodies, have repeatedly singled-out and obstructed Mr. Nelson, the Town's conduct has violated

Mr. Nelson's constitutional rights and the Town is liable for the damages caused by those

violations.

1

<u>Parties</u>

1. Kenneth Todd Nelson ("Mr. Nelson") is an individual residing at 72 Main Street, Westford, Massachusetts.

2. The Board is located at 41 Cochituate Road, Wayland, Massachusetts. The Board is the duly constituted permitting authority for the Town of Wayland for wells and private or semi-public water supplies under the Board's regulation entitled "Minimum Sanitation Standards for Private or Semi-Public Water Supply" ("Well Regulation").

3. The Board is the duly constituted permitting authority for the Town of Wayland for septic tanks pursuant to 310 C.M.R. 15.020.

<u>Jurisdiction</u>

4. This case shares, in part, a factual background with *Kenneth Todd Nelson v. Town of Wayland Board of Health et al.*, Civil Action No. 1:18-CV-11735, which is currently pending before this Court.

5. That case, which the plaintiff originally filed in Middlesex Superior Court, was subsequently removed to the United States Court for the District of Massachusetts after the Plaintiff amended the complaint to include claims for violations of his rights under the United States Constitution.

6. This Court has original jurisdiction over the constitutional violations in that case.

7. Pursuant to 28 U.S.C. § 1367(a), the District Court shall have supplemental jurisdiction over all claims that are so related as to form the same case and controversy as those claims over which the District Court has original jurisdiction.

8.  The claims in this Complaint also include a claim for violation of 42 U.S.C. § 1983, over which this Court has original jurisdiction.

9.  The remaining claims in this Complaint arise out of the same case and controversy as those claims over which this Court has original jurisdiction.

10. Jurisdiction is therefore proper in this Court.

<u>Facts Common to All Counts</u>

11. Mr. Nelson brings this action to remedy illegal actions taken by the Town of Wayland and the Samiotes in denying his request to construct a house and conduct certain real estate work with respect to the property located at 8 Hill Street, Wayland, Massachusetts.

12. Charles and Despina Samiotes own and reside at the abutting Samiotes Property, and through their actions have unlawfully interfered with the normal permitting process for Mr. Nelson's project.

13. The Board has abetted this interference through their own actions with respect to Mr. Nelson's proceedings before the Town. Specifically, as detailed below, the Board used their official positions to delay and block Mr. Nelson's project, citing illegal, baseless and pretextual reasons in an effort to deprive Mr. Nelson of the use of his property.

<u>Mr. Nelson's Application and Proceedings Before the Commission</u>

14. Abutting the Samiotes Property is a lot with an address of 8 Hill Street, Wayland, Massachusetts (the "Nelson Property").

15. The Nelson Property is currently owned by John and Karen Perodeau. Mr. Nelson and the Perodeaus have executed a Purchase and Sale Agreement concerning the Nelson

Property. At all times relevant to this Amended Complaint, Mr. Nelson has acted as the Perodeaus' agent with respect to dealings before the Town of Wayland Conservation Commission ("the Commission"), the Board and the Town in order to develop the Nelson Property.

16. On October 21, 2013, Mr. Nelson submitted, and the Board received, a Disposal Works Construction Permit ("septic system permit") Application and fee for soil testing to be done at the Nelson property.

17. On October 10, 2014, the Massachusetts Department of Environmental Protection ("DEP") issued a Superseding Determination of Applicability pursuant to the Wetlands Protection Act with respect to the Nelson Property, finding that wetlands jurisdiction on the Nelson Property consisted of a 100-foot buffer zone that extended thirty feet onto the Nelson Property.

18. On May 15, 2015, Mr. Nelson submitted a Notice of Intent ("NOI") to the Commission pursuant to the Wetlands Protection Act and Bylaw.

19. In the NOI, Mr. Nelson proposed to construct a one bedroom single family home at the Nelson Property. Mr. Nelson submitted the NOI seeking to conduct work in the limited area of wetlands jurisdiction on the Nelson Property; that is, in a portion of the 100 foot buffer zone located on the Nelson Property as determined by DEP and the Commission's previous wetlands determination at the Nelson Property under the Bylaw.

20. Specifically, Mr. Nelson sought to place a portion of a septic tank and seventy feet of a retaining wall within the wetlands buffer zone.

21. The Commission opened hearings on the NOI on March 12, 2015 and closed hearings on June 25, 2015.

22. Before the Commission, Mr. Samiotes objected to Mr. Nelson's proposed construction of the single family residence at the Nelson Property. Specifically, citing his position as a "professional engineer," Mr. and Mrs. Samiotes submitted numerous written and oral comments to the Commission concerning the Nelson Property including:

   a. A letter to the Commission dated August 28, 2014, from Mr. and Mrs. Samiotes objecting to the Request for Determination of Applicability of the Nelson Property submitted by Mr. Nelson.

   b. A letter to the Commission dated May 26, 2016 from Mr. Samiotes objecting to the stormwater calculations in Mr. Nelson's NOI.

   c. A letter to the Commission dated May 28, 2015 from Samiotes Consultants, Inc., concerning stormwater calculations in Mr. Nelson's NOI.

   d. An affidavit to the Commission dated May 29, 2015 from Despina Samiotes objecting to Mr. Nelson's construction at the Nelson Property and citing her position as a Professional Engineer.

   e. An affidavit to the Commission dated May 29, 2015 from Charles Samiotes objecting to Mr. Nelson's construction at the Nelson Property and citing his position as a Professional Engineer.

f.  A letter to the Commission from Mr. and Mrs. Samiotes dated June 2, 2015 requesting that the Commission close the public hearing on Mr. Nelson's NOI.

g.  A letter to the Commission from Mr. and Mrs. Samiotes dated June 3, 2015, again requesting that the Commission close the public hearing on Mr. Nelson's NOI.

h.  An oral objection from Mr. Samiotes at the Commission's hearing on July 17, 2014 concerning Mr. Nelson's Request for Determination of Applicability of the Nelson Property and alleged flooding.

i.  An oral objection from Mr. Samiotes at the Commission's hearing on September 18, 2014 concerning Mr. Nelson's Request for Determination of Applicability of the Nelson Property and the proposed septic system at the Nelson Property.

j.  An oral objection from Mr. Samiotes at the Commission's hearing on March 12, 2015 concerning Mr. Nelson's NOI and the proposed septic system at the Nelson Property.

k.  An oral objection from Mr. Samiotes at the Commission's hearing on April 16, 2015 concerning Mr. Nelson's NOI, the Samiotes Property and alleged flooding.

l.  An oral objection from Mr. and Mrs. Samiotes at the Commission's hearing on May 21, 2015 in support of a video depicting the Nelson Property submitted to the Commission by Mr. Samiotes concerning alleged flooding.

m.  An oral objection from Mr. Samiotes at the Commission's hearing on June 25, 2015 concerning the Commission's procedure for closing the public hearing on Mr. Nelson's NOI.

23.  Within the oral and written statements to the Commission referenced in Paragraph 21, Mr. and Mrs. Samiotes intentionally made false and misleading statements concerning the Nelson Property, the Samiotes Property and the conditions in the surrounding area. This included, but is not limited to, the characterization of flooding in the area, the location or accuracy of certain photos submitted to the Commission supposedly depicting the Nelson Property and the presence of wetlands on the Nelson Property and Samiotes Property.

24. Based, in part, on the Commission's professional familiarity with Mr. and Mrs. Samiotes, and their characterization that they were "professional engineers" the Commission incorrectly accepted and relied upon these false and misleading statements.

25. During the Commission's consideration of Mr. Nelson's NOI, the Commission relied upon submittals made by Professional Wetlands Scientist Mary Rimmer ("Ms. Rimmer").

26. In connection with Mr. Nelson's NOI, Ms. Rimmer submitted letters, and accompanying photographs, on behalf of Mr. and Mrs. Samiotes in opposition to Mr. Nelson's NOI. These letters and photographs were contained in the Commission's Administrative Record for Mr. Nelson's NOI.

27.  The letters, photograph labels and Ms. Rimmer falsely stated that the photographs submitted to the Commission depicted the Nelson Property.

28. In reality, the photographs knowingly did not depict the Nelson Property or the conditions at the Nelson Property.

29. Despite Mr. Nelson informing the Commission of Ms. Rimmer's misleading and false submittals to the Commission, the Commission improperly relied upon Ms. Rimmer's false submittals in connection with Mr. Nelson's NOI.

30. After the hearing on Mr. Nelson's NOI, the Commission issued an Order of Conditions under the Wetlands Protection Act and a decision under the Commission's Bylaw both denying Mr. Nelson's requested Order of Conditions and proposed work at the Nelson Property. S*ee Decision on Order of Conditions, attached hereto as* <u>Exhibit A.</u>

31. In issuing its decision, the Commission determined that pursuant to the Bylaw, the wetlands areas at the Nelson Property were greater than the SORAD previously issued by DEP and therefore Mr. Nelson's proposed work in that additional wetlands was barred by the Bylaw and Wetlands Protection Act.

32. In issuing its decision, the Commission wrongfully ignored the SORAD issued by DEP, and instead based its denial on an arbitrary delineation of wetlands at the Nelson Property and surrounding area.

33. The delineation relied upon by the Commission was based upon the Commission's determination that the parcel located at 53 East Plain Street, Wayland contained jurisdictional wetlands.

34. 53 East Plain Street is located directly adjacent to the Samiotes Property.

35. Notably, in the delineation relied upon by the Commission in determining Mr. Nelson's NOI, the delineation classifies portions of the Samiotes Property as within

8

the buffer zone of jurisdictional wetlands and land subject to flowing under the Bylaw.

36. In issuing the Order of Conditions and Bylaw decision, however, the Commission did not act within its statutory deadline. As such, on September 11, 2015, Mr. Nelson filed a timely appeal of the Commission's Bylaw decision to the Middlesex Superior Court captioned *Nelson v. Town of Wayland Conservation Commission*, Middlesex Superior Court No. 1581CV05694.

37. In addition, Mr. Nelson appealed the Commission's denial under the Wetlands Protection Act to DEP, by requesting that DEP issue a Superseding Order of Conditions at the Nelson Property on July 25, 2015.

38. On December 11, 2015, DEP issued a Superseding Order of Conditions permitting Mr. Nelson to construct his proposed NOI at the Nelson Property under the Wetlands Protection Act.

39. Following the issuance of the Superseding Order of Conditions, the Town appealed DEP's issuance of the Superseding Order of Conditions.

40. The Town's appeal of the Superseding Order of Conditions remained pending until, as referenced below, the Town issued a Well Permit to Mr. Samiotes. Following the issuance of the Well Permit, the Town, years later, dismissed its appeal of the Superseding Order of Conditions.

41. On June 28, 2016, the Middlesex Superior Court (Tuttman, J.) allowed Mr. Nelson's Judgment on the Pleadings and vacated the Commission's decision under the Bylaw finding that the Commission plainly failed to issue its decision within the statutory deadline.

42. Notwithstanding the Superior Court's straightforward decision, the Commission appealed the Superior Court's decision.

43. On October 6, 2017, the Massachusetts Appeals Court affirmed the Superior Court's decision and upheld Mr. Nelson's permit to conduct development work related to his proposed single family residence at the Nelson Property under the Bylaw. *See Nelson v. Conservation Commission of Wayland,* No. 2016-P-1649 (Mass. App. Ct. October 16, 2017) (unpublished Rule 1:28 Decision).

44. As a result of the Appeals Court's decision, under the Bylaw, Mr. Nelson was permitted to construct the single family residence and septic tank as set forth in his NOI.

45. On June 28, 2018, Mr. Nelson submitted, and the Board received, revised septic system design plans for the Nelson Property, reflecting revisions based on recent wetlands decisions made since the time of the original application.

46. On July 30, 2018, five years after the original application, the Board issued Mr. Nelson a septic system permit for the Nelson Property.

<u>Mr. Samiotes' Well Permit</u>

47. Although Mr. Nelson submitted his NOI on May 15, 2015 in order to construct his single family residence and septic tank at the Nelson Property, due to the above-referenced actions and appeals, to date, no construction has begun at the Nelson Property and the Nelson Property is currently vacant.

48. On information and belief, in order to prevent Mr. Nelson's construction at the abutting Nelson Property, Mr. Samiotes has sought to install a well at the Samiotes Property.

49. Pursuant to the Board's Well Regulation, no well "shall be installed, altered or repaired until a permit has been obtained from the Board of Health or its Agent." *See Well Regulation*, attached hereto as Exhibit B.

50. On October 27, 2017, Mr. and Mrs. Samiotes filed an "Application for Permit to Construct a Well," with the Board in order to install a groundwater drinking well at the Samiotes Property.

51. Mr. Samiotes was issued a permit by the Board to install the well on October 27, 2017 (the "Well Permit"). *See Well Permit*, attached hereto as Exhibit C.

52. Prior to issuing the Well Permit, the Board did not hold a public hearing concerning the Well Permit.

53. Prior to issuing the Well Permit, neither the Board nor Mr. Samiotes, provided any notice to the abutters of the Samiotes Property, including Mr. Nelson, concerning the Well Permit.

54. Prior to issuing the Well Permit, the Board did not take a vote.

55. Prior to issuing the Well Permit, the Board did not provide Mr. Nelson, or any other potentially aggrieved parties, with an opportunity to be heard concerning the Well Permit.

56. Prior to issuing the Well Permit, the Board did not hear any public comments concerning the Well Permit.

57. The Samiotes Property is currently connected to the Town's public water service.

58. On information and belief, the proposed well on the Samiotes' Property is not necessary, but is meant to preclude Mr. Nelson from constructing his single family residence at the Nelson Property.

59. Mr. Samiotes did not apply for the Well Permit until after the decision of the Appeals
    Court upholding Mr. Nelson's ability under the Bylaw to build the single family
    residence at the Nelson Property.

60. Pursuant to Section III (D) of the Well Regulation, wells are required to be located "at
    least... 50 ft. from any part of [a] septic system and 100 ft. from any leaching area."

61. Under 310 CMR 15.211, a septic system may not be constructed within fifty feet of a
    private water supply well.

62. Under Section III (D) and 310 CMR 15.211, the construction of Mr. Samiotes' well
    under the Well Permit, would preclude Mr. Nelson from installing a septic system
    and single family residence at the Nelson Property under his plans, because the well
    would be located within 50 ft. of the septic system and 100 ft. of the leaching field.

63. The installation of Mr. Samiotes' proposed well would deprive Mr. Nelson of his use
    and enjoyment of the Nelson Property, and diminish the property value of the Nelson
    Property.

64. As a result of the Board's issuance of the Well Permit, Mr. Nelson is precluded from
    installing the septic system and building his residence at the Nelson Property.

65. The Board should have considered the impact of the proposed well on the Nelson
    Property in issuing the Well Permit.

66. The Board failed to consider the impact of the proposed well on the Nelson Property
    in issuing the Well Permit.

<u>Mr. Samiotes' Proceedings Before the Commission</u>

67. On October 23 2017, Mr. Samiotes filed a Request for Determination of
    Applicability with the Commission under Chapter 194 of Wayland's Wetlands and

Water Resource Protection Bylaw (the "Bylaw") in order to determine the presence of jurisdictional wetlands on the Samiotes' Property under the Bylaw in order to install the well. *See Request for Determination of Applicability*, attached hereto as <u>Exhibit D</u>.

68. Mr. Samiotes did not file a Request for Determination of Applicability under the Wetlands Protection Act, G.L. c. 131 § 40, in order to determine the presence of jurisdictional wetlands on the Samiotes' Property under the Wetlands Protection Act.

69. Notably, the Superseding Determination of Applicability issued by DEP in connection with Mr. Nelson's above-referenced NOI, indicated that the Samiotes Property contained jurisdictional wetlands under G.L. c. 131 § 40.

70. As the SORAD issued by DEP indicates that the proposed location of Mr. Samiotes' well was located within wetlands under G.L. c. 131 § 40, Mr. Samiotes' was required to file a Request for Determination of Applicability under the Wetlands Protection Act with the Commission.

71. After hearing, on November 2, 2017, the Commissions issued a Negative Determination of Applicability under the Bylaw, finding that the location of Mr. Samiotes' proposed well did not contain jurisdictional wetlands.

72. As the SORAD issued by DEP, and the Commission's prior delineation with respect to Mr. Nelson's NOI indicates that the proposed location of Mr. Samiotes' well was located within wetlands under G.L. c. 131 § 40, the Commission was required to consider the SORAD in issuing its Determination of Applicability to Mr. Samiotes.

73. The Commission did not consider the SORAD or its prior delineation under the Bylaw in issuing its Determination of Applicability to Mr. Samiotes.

74. In connection with Mr. Nelson's above-referenced NOI, in 2015, the Commission previously determined that the location of Mr. Samiotes' proposed well was located within jurisdictional wetlands under the Bylaw.

75. Because, in 2015, the Commission previously determined that Mr. Samiotes' proposed well location was located within wetlands under the Bylaw, the Commission was required to consider that 2015 determination in issuing its Determination of Applicability to Mr. Samiotes.

76. The Commission did not consider its 2015 delineation in issuing its Determination of Applicability to Mr. Samiotes.

Revocation of Mr. Nelson's Septic System Permit

77. In a letter dated February 13, 2019 ("the letter"), Julia Junghanns, on behalf of the Board, unilaterally advised that the septic system permit relating to the property was suspended. *See Septic System Permit Letter*, attached hereto as <u>Exhibit E</u>.

78. In the letter, the Board stated that since the date of the permit, July 30, 2018, the Board had "looked into this matter further" and consulted with a soil scientist.

79. The Board further stated that based on new data from monitoring wells adjacent to the property and from soil borings on and around the property, the Board was concerned that "conditions may have changed and we are unsure as to whether a septic system could function on this property due to the potential wetlands, soil types, and high ground water table."

80. Based on the concerns noted in the letter, the Board stated that it considers the septic permit "void as per MassDep Title 5 Regulations 310 CMR 15.020(1)," and stated that a new application would have to be filed to pursue a new septic system permit.

81. The Board also requested written authorization to allow two monitoring wells in the area of the proposed septic system, despite the fact that it had already secured data from monitoring wells on the adjacent property.

82. The Board did not, and has not, provided a copy of the data referenced in the letter, upon which it based its decision to void the septic system permit.

83. 310 C.M.R. 15.020(1), which governs Disposal System Construction Permits, states that a septic system permit is void in the event that "it is discovered during installation of the system that site conditions differ from those contained in the site evaluation and/or the approved design plans."

84. The Board does not claim in the letter that conditions on the site differ from those in any of the previously submitted site evaluations or approved design plans.

85. The Board does not claim in the letter that a difference in site conditions was discovered during installation of the system.

86. The Board does not claim in its letter that a wetland exists on the Nelson property, but instead speaks to the presence of conditions that *could* indicate a *potential* wetland.

<u>Violation of Mr. Nelson's Constitutional Rights</u>

87.  The Nelson Property is located in a residential neighborhood, with constructed residential homes located directly to the south, west, northwest and the Samiotes Property to the northeast.

88. Under the Town of Wayland's zoning requirements, the Nelson Property is a buildable, grandfathered lot, in which Mr. Nelson's proposed residential home is permissible.

89. On information and belief, Mr. and Mrs. Samiotes do not want Mr. Nelson to construct a single family residence on the Nelson Property for personal reasons, including the desire to maintain the Nelson Property as a vacant lot in order to maintain the current property value, view and noise level of the Samiotes Property.

90. On information and belief, Mr. and Mrs. Samiotes have impermissibly contacted the Commission, the Board and other Town officials in order to delay and obstruct Mr. Nelson's proposed construction at the Nelson Property.

91. Based on these communications referenced in Paragraph 87 and the above-referenced comments, both the Commission and the Board have imposed unfair, unnecessary and unequal restrictions and requirements upon Mr. Nelson including, but not limited to, requiring Mr. Nelson to undertake and submit repeated testing to the Board concerning soil conditions at the Nelson Property and requiring Mr. Nelson to undertake extensive stormwater analysis at the Property.

92. In order to delay and/or deny Mr. Nelson's proposed development of the Nelson Property, the Commission and the Board, acting under the color of law, have treated Mr. Nelson unequally to similarly-situated individuals and unreasonably interfered with Mr. Nelson's development of the Nelson Property.

93. As referenced above, in denying Mr. Nelson's NOI, the Commission explicitly found that the property at 53 East Plain Street contained jurisdictional wetlands, and therefore the wetlands buffer zone extended to the Nelson Property; the Commission denied Mr. Nelson's NOI based on this buffer zone. However, as referenced above, in evaluating Mr. Samiotes' proposed well location, the Commission ignored their prior

delineation which they applied to Mr. Nelson even though the prior delineation indicated that the buffer zone existed on the Samiotes Property.

94. On information and belief, the Commission's unequal treatment of Mr. Samiotes and Mr. Nelson, and selective application of the Commission's prior wetlands delineation, was motivated by the Commission's desire to prevent Mr. Nelson from constructing his single family residence at the Nelson Property.

95. As referenced above, following DEP's issuance of a Superseding Order of Conditions for the Nelson Property, the Commission appealed the SOC in an administrative hearing before DEP. Following the Board's issuance of the Well Permit to Mr. Samiotes, which effectively precluded Mr. Nelson's development of the Nelson Property, the Commission, years later, voluntarily dismissed their appeal of the SOC.

96. On information and belief, and based on the timing of the Commission's action, the Commission's appeal of the SOC was not motivated by any legitimate wetlands interest, but was motivated by the Commission's desire to prevent Mr. Nelson from constructing his single family residence at the Nelson Property.

97. As referenced, the Commission's denial of Mr. Nelson's NOI was ineffective because the Commission failed to act within its clear statutory deadline. However, following a decision by the Superior Court, which vacated the Commission's decision based on the failure to act within the statutory deadline, the Commission filed an appeal with the Massachusetts Appeals Court.

98. On information and belief, and based on the merits, or lack thereof, of the Commission's actions, the Commission's appeal of the Superior Court Decision was not motivated by any legitimate wetlands interest or legal merit, but was motivated by

the Commission's desire to prevent Mr. Nelson from constructing his single family residence at the Nelson Property.

99. In connection with Mr. Nelson's NOI, the Commission, and Commission members, requested additional information and received comments from Mr. and Mrs. Samiotes concerning flooding in the area surrounding the Nelson Property, including the Samiotes Property. However, in connection with Mr. Samiotes' request to the Commission concerning the well, the Commission did not once raise a concern or consider potential flooding in the area, even the though two proposals were referencing the same area and should have been evaluated equally.

100. In connection with Mr. Nelson's NOI, it was determined by the Commission that, based on soil testing, the Samiotes Property contained areas protected by the Wetlands Protection Act. However, in connection with Mr. Samiotes' request to the Commission concerning the well, the Commission inexplicably ignored these prior findings and held that no protected areas were on the Samiotes Property.

101. On information and belief, this contradictory and unequal treatment of the Nelson Property and the Samiotes Property was not motivated by any changes in the site conditions or wetlands interests, but was motivated by the Commission's desire to prevent Mr. Nelson from constructing his single family residence at the Nelson Property.

102. In connection with the septic system permit for the property, the Board voided the permit after deciding, without justification, to look into the matter further, based on new data that was obtained from the adjacent property and not shared with Mr. Nelson.

103. The Board violated 310 C.M.R. 15.020(1) by voiding the septic system permit based on new data that it claimed could indicate a potential wetland, or that conditions *may* have changed, rather than the actual discovery of site conditions that differ from those contained in the site evaluation or approved design plans.

104. On information and belief, this unequal and unfair treatment of the Nelson Property was not motivated by any actual differences between the approved design plans and conditions discovered on site, but was in fact motivated by the Board's desire to prevent Mr. Nelson from constructing his single family residence at the Nelson Property.

105. Based on the above-referenced efforts by the Board and by the Commission, Mr. Nelson has been required to expend additional, otherwise unnecessary, legal fees and engineering fees, and has been prevented from constructing the residence at the Nelson Property.

### COUNT I
### APPEAL IN THE NATURE OF CERTIORARI

106. Mr. Nelson repeats and re-alleges paragraphs 1-105 as if fully set forth herein.

107. Mr. Nelson is aggrieved by the decision of the Board in voiding the septic system permit and seeks relief in the nature of certiorari.

108. Mr. Nelson has exhausted all administrative appeals with respect to the decision of the Board in voiding the septic system permit.

109. The decision of the Board in voiding the septic system permit is based upon errors of law apparent on the face of the record, is unsupported by substantial evidence, is unreasonable and is not in accordance with the law or applicable regulations.

110. The Board's decision to void the septic system permit is arbitrary and capricious.

111. As a direct result of the actions of the Board, Mr. Nelson has suffered a substantial and cognizable injury.

## COUNT II
## DECLARATORY JUDGMENT

112. Mr. Nelson repeats and re-alleges paragraphs 1-111 as if fully set forth herein.

113. The septic system permit was properly granted to Mr. Nelson in the first instance.

114. The Board's decision to void the septic system permit was made without justification and in violation of 310 C.M.R. 15.020(1).

115. Mr. Nelson is aggrieved by the decision of the Board in voiding his septic system permit.

116. An actual case and controversy exists concerning the legality of the Board's action in voiding Mr. Nelson's septic system permit.

117. Mr. Nelson is entitled to a declaration that the Board's action in voiding his septic system permit was in violation of 310 C.M.R. 15.020(1).

## COUNT III
## 42 U.S.C. § 1983

118. Mr. Nelson repeats and re-alleges paragraphs 1-117 as if fully set forth herein.

119. Mr. Nelson's right to use, enjoy and develop the Nelson Property is a right secured by Articles 1, 2, and 10 of the Declaration of Rights of the Constitution of Massachusetts and the Fourteenth Amendment of the United State Constitution.

120. The Board intentionally treated Mr. Nelson differently from others similarly situated, without a rational basis for the difference in treatment.

121. The Board, by voiding the septic system permit, deprived Mr. Nelson of his property without due process of law.

122. The Board, while acting under the color of state law, caused Mr. Nelson to be deprived of his rights, including but not limited to those of equal protection and of due process, as secured by the Constitution and the law of the United States in violation of 42 U.S.C. § 1983.

123. As a direct, proximate and foreseeable result of the conduct of the defendants, individually and in their official capacities as members of the Commission and the Board, Mr. Nelson has suffered damages.

**WHEREFORE**, Mr. Nelson requests that this Court:

1.  Enter Judgment against the Board in accordance with Count III in an amount not ascertained but in excess of $25,000.00 plus interest, attorneys' fees and costs.

2.  Declare that the Board's decision to void the septic system permit is invalid and without effect.

3.  Vacate or reverse the decisions of the Board.

4.  Award Mr. Nelson attorneys' fees and costs;

5.  Order such other relief as this Court deems just and appropriate.

The Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,
Kenneth Todd Nelson,
By his attorney,


/s/ Joshua Speicher
George F. Hailer, BBO #554793
Joshua L. Speicher, BBO # 688416
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue
Suite 345
Boston, Massachusetts 02210
(617) 439-4990